Good afternoon, Justice Carter, Justice Wright, Justice Litton, I want to thank you for providing me the opportunity to present our arguments and having the ability to argue in this, what I would call, hallowed courthouse. First time I've had an opportunity to be here, and it's a pretty awesome feeling to be standing here. Very historic spot. It's a pretty historic spot. May it please the court, as the clerk mentioned, my name is Rich Johnson. I represent Rose Conzachi. Rose Conzachi is the sister of the decedent in this case, Walter Vincus. Walter died on March 31st of 2008. Under his will, Rose, the sister, was supposed to receive, or is to receive, 50% of all of the income from a company called All World Storage. In the event that the bills, and she's supposed to receive that for the rest of her life. In the event that the business is sold, she's supposed to receive 50% of the net proceeds. What is All World Storage? All World Storage is a piece of property in Will County that consists of a number of tractor trailer backs that are on the ground, and people go in and they store stuff there and pay monthly fees. It's been there for a long time, and I believe the executive testified that produces about $100,000 a month in net income.  The two issues presented before this court for its review are first, whether or not Judge Siegel erred in denying Rose's petition to remove the executive Tammy Vincus, who was the daughter of the decedent, and whether or not that decision was against the manifesto of the evidence. I will further talk about section 5-2-2 of the Illinois Appropriate Act, which basically sets forth the grounds for removing an executor. There are ten stated grounds in that statute. We have proven, by way of evidence, three of those grounds at the hearing. The second issue is whether or not Judge Siegel erred in denying Rose's motion to reconsider, and whether that was abuse of discretion. If you look at the transcript of the proceedings, what I think the court needs to be aware is that Judge Siegel testified that, or basically stated in his ruling, I don't deal in probate. Need to give a brief history of this case. Judge Siegel was the fourth judge in Will County assigned this matter. Because of elections, because of retirements, because of motions for substitution of judge, it ended up with him as the judge that this matter was finally assigned to. He generally sits in the chancellor's special relief foreclosure, so this is new to him. The court's first ruling in denying a motion to remove Tammy Vincus is the most important. I'm going to address that first. I've been practicing law for 30 years. In 1982, I got out of John Marshall Law School and I went to a small firm in the city of Chicago, looking for a job. Partner said, son, we'll give you a job if you want to be a probate lawyer. Never knew what probate was as we come out of law school. We all think we're going to be a litigator and set the world on fire. But he said, you want a job? You're a probate lawyer. I said, see this document? It's a probate act. Read it. It's 80 pages. Understand it. It tells you everything you need to know. So that's what I did. For the last 30 years, I've been practicing probate law in the state administration. There's a lot of litigation in probate. There is. And actually, Judge Justice, lately it seems to be more than there was before. Walter died in March of 2008, as I said, within the state of approximately $10 million. It's not a small state. Today is June 7th, 2002, 2012, rather. And basically, the executive Tammy Lynn Vincus has ignored the statutory requirements in this book with regard to what her duties are as an executive. As of today, there is still not a complete inventory of the total assets of this $10 million estate. Never been filed. Is that her fault or is that a series of accountants? No, that's just, Judge, it's not the accountant's fault. She's the one that has, she's had two accountants, three sets of lawyers. It's not the accountant's fault. She's supposed to have the knowledge to administer this estate. She's supposed to know what the assets are. If you look at the inventory in the record, it has motorcycles, it has a Harley Davidson, it has all these assets that are very specific, but it's still not complete. And doesn't list some of the assets that we have knowledge are in the estate. She was required to file it by October of 2008, still hasn't been filed. More importantly, she's filed her first accounting on this matter on August 4th of 2010, but it still hasn't been approved by the court. She was ordered by the court on October 8th, 2009 to file that. She didn't file it until almost a year later, and it still hasn't been approved. Section 14-1 says you gotta file an inventory within 60 days. Section 24-1 says you gotta file an accounting. The first accounting should have been received on June 24th, 2009. We still have a first accounting that's in dispute before the court. Third, misuse of estate assets in violation of the court order. One of the first things I did representing Rosa, wanted to make sure that the assets of All World Storage were properly being managed and handled. One of the first orders in May 23rd of 2008, and it's in the record, says the executor's only supposed to use the income for All World Storage for the operation of All World Storage. And what has happened, what do we know has happened? When she testified, she knew what that order said. She's paid for the operation of Crazy Rock, which is another business asset of the estate. She paid money to her boyfriend, Corey Nobles, who was not employed by All World Storage. She paid money to her former boyfriend, Mark Rowan, an employee that she had fired. And why did she fire Mr. Rowan? She fired Mr. Rowan because she believed that April 15, 2008, shortly after Mr. Vincus died, Mr. Rowan broke into his house and stole up to a million dollars from his personal safe. What has she done? She's done nothing. The statute says you can file a sanctation proceeding under 16-1, try to collect those assets. Never called the police, never filed a pleading. Basically, she was concerned that Mr. Rowan would come after her, so she's done nothing to collect that asset. She's allowed assets to be stolen without attempting to recover those assets. Finally, as I stated, Rose has a right to 50% of the income from All World Storage, as the will says. Initially, when counsel was retained by Ms. Vincus, payments were being made, and everything seemed to be fine. There have been no distributions since October of 2009, as the record shows. There's about $100,000 a month coming into this business. And when she testified at the hearing, she says, well, I paid Rose for money, but I guessed at the amounts. I had no idea what I was paying her. And she was asked again, are these amounts the correct amounts? I have no idea if they're the correct amounts, if they're 50% of the income. So the statute says- She was not made whole by the time of the hearing. No, we don't know, Judge. Justice, we don't know whether or not she's been made whole or not, because we don't have an accounting that accurately reflects the income of All World Storage. What we do know from the accounting that has been filed, that the estate owes All World Storage $623,000. So in other words, the income from All World Storage has been used to the extent of $623,000 to fund the rest of this estate. The statute for removal- How much has your client received from that? She's received close to $250,000, sir. There are 23-2 of the Probate Act says there's ten sub-paragraphs to remove somebody as an executor. We've been able to establish by evidence three of those. That whether or not an executor wastes or mismanages estates, and we've talked about the waste and mismanagement. Whether or not an executor fails to file an inventory or an accounting pursuant to the statute, we've shown that. She's admitted that. She was ordered to do it and waited a year after she was ordered even to do that. And the other is for other good cause. We've shown for other good cause that Ms. Vincus, although she might be the daughter of the decedent, and I give great preference to the decedent's choice of his executor. I want to make that clear. Mr. Vincus could do whatever he wants with this property. He can appoint whoever he wants to be the administrator of or executor of his estate. I give great preference to that. I don't file- Is there a successor executor name? I don't recall. I'm reviewing the will. I haven't seen that there is a successor. What we had proposed to counsel was that we put a corporate trustee involved in order to manage the estates and gather the estates so that we can get this resolved. So we've hit on three of the ten. The case law that has been presented to you shows all we really need to do is one. And again, I give great preference to the decedent's choice of executive. But when it is so apparent and there's such an abundance of evidence of the inability of an executor to manage and administer her estate, she needs to be removed. The state, the law is quite clear that Ms. Vincus has a fiduciary duty not only to my client Rose, but to the remaining heirs and legatees of this will. That duty is the highest standards of fair dealing and diligence. She has failed in her duty and needs to be removed. And after presenting this evidence to Judge Siegel, he failed to do so. We believe that's against the manifest weight of the evidence. The second issue I will speak of briefly is whether or not the court denied the motion to reconsider. I don't want to say it was piling on, but shortly after the hearing, we learned that Tammy Vincus's, well, the estate's license for Crazy Rock has been revoked by the state of Illinois. For failing to pay sales tax and withholding tax. It was additional evidence of her inability to manage a sizable estate of this. Now she has paid that license back and her license has been reinstated, but we thought that was additional evidence that we felt the court should review and consider when it made its decision, or would reconsider its decision as to whether or not to remove Ms. Vincus. That wasn't the first time Ms. Vincus had her license revoked. She also had another bar or establishment called Tammy's Tap, which her license had been revoked approximately a year prior to the decedent's death. And it was revoked for purposes of, because of sale of narcotics and the performance of sexual acts on the property. This is not, even though she's the daughter of the decedent, this is not a woman who has the knowledge, the ability, the credibility to run a $10 million estate that produces close to a million to $2 million worth of income per year. Without the necessity of, without having somebody in there that has the knowledge to administer the estate for everyone involved. Thank you for letting me provide Rosa's argument today. Counselor? Good afternoon, your honors, Madam Clerk, Mr. Bailiff, Mr. Johnson. May it please the court, my name is Joseph Namikis and I represent Tammy Lynn Vincus, Wilkerson, who is the executrix of the estate of Walter Vincus. As is often the case, the reason we end up here is because we definitely have an agreement to disagree. And Mr. Johnson and I certainly disagree on the facts in the application of the law in this case. This court has consistently held that a reviewing court will not disturb a trial court's findings and ruling unless the error is clear and palpable and against the manifest weight of the evidence. The appellant posits that such an error occurred in this case and was made by Judge Siegel. We would, however, suggest that if you review all the facts before the court, a different conclusion would be made. First of all, every single case that is cited by the appellant is one-sided on the facts. In other words, all of the acts committed of either commission or omission by an executor were one-sided. There was nothing to contradict the evidence. In this case, there is. If you take a look at the hearing, first of all, for example, the accountant issue. The court found that there was a problem with the dueling accountants. I know I erred when I put in the brief that it's dueling law firms, but my mind seemed to wander at the moment when I was writing it. But the fact of the matter is, is the Lepkian associates, who were initial accountants for the estate, were holdover accountants from Walter Vincus. And All World, and Crazy Rock, all enterprises that were initially run by Walter Vincus, the testator. When Cordano Severson took over the accounts for the estate and for Tammy Vincus, notice was given to Lepke that that was being done and that they wanted the records. Mr. Jensen makes a big deal about the accounting not being done. Well, it was done and it's still in dispute. But be that as it may, the point is the reason nothing was able to be done was Lepke and associates absolutely refused to turn over the accounting records. Judge Siegel saw that. He was very concerned about the accountants and the problems that they were having despite a subpoena to Lepke, despite a rule to show cause. And despite all knowledge that the court had ordered on accounting to be prepared, Lepke nevertheless ignored and kept these records hostage from Ms. Vincus. So what can't you do, short of storming the place? Could you have paid them? Pardon me? Wasn't the issue that they hadn't been paid? Yes, there was. And there was a dispute between Ms. Vincus and Lepke with respect to the exact services that were performed, and I would submit to this court that I think that may be another issue that's going to be addressed somewhere down the line. But the fact still remains, they refused to cooperate with a former client. As referenced in our brief, Your Honor, again, the authorities cited by the appellant are one-sided. There is one case, maybe, with the exception of Inmate Lenos. The appellate court has affirmed the trial court's ruling in every case that they cited. And the point is, is that the appellate court refused to disturb the trial court's ruling and finding, basically stating that the court was in a better position to view the evidence before it, to make a determination to evaluate that evidence, to evaluate the demeanor of the witnesses, and then make a decision. Quite frankly, that's exactly what Judge Siegel did here. This wasn't a one-sided case where, as I believe in Chapman or in Lenos, where the Attorney General's office showed up based on an allegedly fraudulent real estate transaction. I mean, both parties were represented. Testimony was given by both sides. And the fact that the court asked a number of questions and considered all the facts is evident by saying the first thing that Judge Siegel said after we concluded and he started his findings and ruling, this is a closed case. And after considering everything, he decided that whatever problems there may be could be solved by terminating the independent administration and substituting the supervised one. However, the court did not find the conduct of Ms. Vink is egregious enough to remove her as an executrix. And that reasoning should stand. The appellant commented, actually, this is one point I did want to make. Nowhere in their briefs did the appellant ever mention a single act by the court that would suggest that it didn't understand something or that it was an error or anything like that. It was always, Tammy did this, Tammy did that. That's not the standard of review here. The standard of review is, did the court's, was the court's determination beyond the manifest way to the evidence? And the fact of the matter is, it's not. The only time they did mention one action by Judge Siegel, and that was when Judge Siegel referenced the testator's intent. According to the appellant, they said that that was highly improper and irrelevant to the proceedings. That position clearly flies in the face of In re the estate of Kirk, a case that they relied on. And in that case, the court basically said the executor may not be removed merely because beneficiaries of the will might handle it differently or they want a different executor. And the court went on to say that the court must honor decedent's intent as gleaned from the terms of the last will and testament. Your honors, Tammy Vincus isn't a model of what an executor should be. But that's not the issue here. The issue is, was Judge Siegel's determination, findings and ruling clear, error and against the manifest way to the evidence I would submit to this court? It wasn't. And if you don't have any further questions, thank you. I like Judge Siegel with all due respect. He's dealing with an area law he's not familiar with. He's doing the best he can. He was present at the hearing. He's doing the best he can. He made a ruling that he felt was appropriate in this decision. But I would like to bring to the court's attention that this is the, he had indicated he's not, he doesn't do probate law, never did probate law. This was like one of the first cases he had in front of him. And I tried to do my best to direct his attention to the areas that I thought were concerned. I think the dueling accountants is a red herring. The fiduciary, the executrix, Ms. Vincus has a duty to the estate, all beneficiaries, all heirs, all legatees, to act with honesty, to act with business, business account, and basically administer the state for everyone involved. Regardless of what was going on with the accountants, it's, you have to look at the executor's conduct here, and you can't change the facts. You can't change the fact she hasn't paid Rose Kanzaki the money that's due to her under the terms of the will. You can't change the fact that somebody broke into the safe and money's missing and she did nothing about it. It can't change the fact that she took money from this business, which is rightfully and properly borne. Hasn't she been paid about $365,000 in checks? Maybe it's $365,000, $365,000. You said $250,000 or something. It's about $100,000 off, right? I'm sorry, it's $365,000. It's a lot of money, Justice. It's not a small amount of money, keeping in mind that this business makes about a million dollars a year. In addition, she testified that Crazy Rock made about $22,000 a week. So we have two very successful businesses that produce a large amount of cash, and we just need to account for that. And I'm concerned that even though this is court supervised now, that the actions of the executor going forward need to be approved by the court, that this executor is just not up to the task. It's, she can't do it. She's shown that she doesn't have the ability to do it. And with regard to that, I believe Justice Siegel erred in his ruling, and I believe we provided a lot of evidence in not only the briefs, but any arguments showing that his decision was against the manifest weight of the evidence. Thank you. Anything? Thank you, Counsel. All right, thanks again for letting me be here today. I'm glad you enjoyed the courtroom. It's very historic. In fact, there was a memorial service for Lincoln after he was assassinated right here, presided over by the Supreme Court of Illinois in 1865. Is that going to happen today? No, not today. I thought it was happening today. 1865. With all the deference to the court, I understand that we can't take pictures in here. If you guys are off the bench, could I take a picture? Sure. All right, thank you. We'll take a brief recess now for a panel change. We'll take this case under advisement and rule with dispatch. Thank you.